STATE OF OHIO EX REL. METZ ET AL. v. LUKE A. STALEY ET AL.

1. ACT 90, O. L. 217, IS MANDATORY AS TO TIME FOR LEVY.

The provision for levying taxes for a certain improvment, contained in an act passed by the general assembly of Ohio, found in 90 O. L., 217, is mandatory, and not directory on the county commissioners, as to the time when such levy for taxes is to be made and the levy for the first installment of said taxes should be made in the year 1893.

2. MUST BE A TENDER OF PAYMENT BEFORE BOND CAN BE ISSUED.

Before such county commissioners can be compelled to issue the bonds provided for by said act, there must be a tender of payment for such bonds.

MANDAMUS.

SMITH, J.

This case has been presented to us on a demurrer filed to the petition, by the defendants.

The petition in substance avers that the relators are citizens and taxpayers of Hamilton county, owning lots and lands therein liable to be assessed for the improvement of Columbian avenue. That on April 12, 1893, the general assembly passed an act for the improvement of said avenue; that the commissioners of Hamilton county, on May 9, 1893, duly appointed three viewers to proceed under said act, who, in accordance therewith assessed damage to the owners of land on such improvement and estimated the cost of such improvement and their report was approved by the commissioners.

That thereafter, for the purpose of raising the money necessary to meet the expenses of said improvement, and for the purpose of paying the damages reported by the viewers, the commissioners passed a resolution directing the issue of $14,000 of the bonds of Hamilton county, to pay the damages so awarded by the viewers; said bonds were to be payable in five years from date bearing interest at five per cent. per annum, payable semi-annually, and they, by resolution, directed that advertisement be forthwith made for the sale thereof, in pursuance of law. Said commissioners also had plans and specifications for such improvement prepared by the county engineer which they approved and adopted, and advertised for bids for the improvement of said avenue under said plans and specifications, and under said act. That afterwards they advertised for bids for said bonds, and Irwin, Ellis & Ballman made the highest bid, and in all respects in accordance with the law, and their bid was duly accepted, and the $14,000 of bonds were duly awarded to said bidders by the commissioners, and such action was duly approved by the board of control of said county.

That demand has been made upon said defendants, commissioners, and Hagerty, auditor of the county, to sign the bonds, and deliver them to said bidders, that the damages assessed may be paid, and the improvement of the avenue proceed. But each one of said defendants refused to do so. That said commissioners have refused, though requested to do so, to make a levy or fix a rate in any amount whatever on the duplicate for the year 1893, so as to provide for the payment of the bonds aforesaid, or for raising the money necessary to meet the expenses of the improvement of said Columbian avenue.

The relator further avers that the cost of said improvement including damages for the right of way will be $90,000, and to raise the one-half of the same, together with interest for the bonds that may be issued, will require a levy of one-twenty-fifth of a mill upon the dollar for the year 1893, as required by said act.

The prayer is that a writ of mandamus issue, commanding the defendants to sign said bonds, and commanding the commissioners to fix a rate and make a levy in the grand levy of taxes, on all taxable property of said county of Hamilton, on the duplicate for the year 1893, of a tax one-twenty-fifth of a mill on the dollar, for the construction and improvement of said avenue.

Do the averments of this petition make a good cause of action and entitle the relators to the relief asked by them, or any part of it, against the defendants or any of them? This raises the question of the construction which should be placed on several of the provisions of the act under consideration, 90 O. L., 217.

In the first place, we may say that whatever may be our views of the propriety or expediency, or it may be as to the vicious character, as it is claimed to be, of legislation like this, which has become so common within the past few years, is in a case of this kind wholly immaterial. If the general assembly under the constitution, has the right to pass a law like this, the courts have no right to interfere with its proper execution, but when called upon, must aid in its enforcement. Having the power the legislature must decide as to its exercise. And we understand it to be conceded by counsel for the defendants, and to have been decided by the court by whose judgments we are bound, that the general assembly has power to pass acts of the character of the one under consideration; and the questions for our decision are: What has that body directed to be done, and have the officers upon whom the statute has imposed duties performed them?

It is further conceded by counsel for the defendants that by this statute, the county commissioners are required, and are bound to proceed and construct this improvement in conformity with the provisions thereof; and the petition shows that they have diligently and promptly proceeded thereunder, and duly appointed three disinterested freeholders of the county as viewers, and gave to them and to the public the notice required by sec. 3 of the act, and that such viewers proceeded to assess and determine the damages sustained by persons through whose premises the improvement is to be made, and estimated the cost and expense thereof, and reported the same to the commissioners who approved the same. It does not appear what such estimate was, though the relators in their petition aver that the cost of the improvement will be $90,000. It further appears that the commissioners resolved to issue $14,000 of the bonds of the county, payable five years from the date thereof, to meet the damages assessed, and the necessary expenses under the act and advertised for bids therefor, and accepted the lowest bid, but have declined, on demand made (but by whom does not appear), to sign said bonds and deliver them to the successful bidders; nor does it appear that such bidders ever tendered the money bid therefor or are ready and willing to accept and pay for them. It also appears that the commissioners have had plans and specifications made for said improvement, and have advertised for bids for the doing of said work, but that the commissioners have refused to make a levy, or fix a rate in any amount whatever for a tax for this improvement on the duplicate for the year 1893, and the question is thus raised (for it is conceded that the time when this was to be done, if at all, has passed) whether it was obligatory on the county commissioners to do that and for any particular amount.

It is the claim of the counsel for the officers that it is not. That sec. 7 of the act, which provides that "the said commissioners, in addition to their other powers of taxation, are hereby authorized and required to collect on the grand levy of taxes on all the taxable property of said county on the duplicate for the year 1893, a tax of such proportion of a mill on the dollar, and for the four following years a similar tax each and every year of such proportion of a mill on the dollar as will raise a fund sufficient to pay one-half of the total cost and expense of said improvement, together with the interest on any bonds issued by the commissioners under the provisions of this act," is merely directory as to the time when such levy shall be made and is not mandatory in the legal sense of that word, and that while the commissioners must levy the tax at some time, so as to provide funds to pay for the cost of the improvement, that no

part of it must go on the duplicate of 1893, or that such levy might not be made until 1897, so that it is levied and collected in time to provide for the payment of the bonds to be issued to raise money to pay for the cost and expense of the improvement, which it is said are to be payable in five years from the issue thereof.

We are unable to agree with this view. It seems to us perfectly clear, in the language of the statute itself, and viewed in the light of the authorities, and by the decisions of the Supreme Court in *State ex rel.* v. *Harris et al.*, 17 O. S., 608 and *State ex rel.* v. *Com'rs*, 35 O. S., 458, that while this provision is not mandatory in the sense that if it be disregarded by the commissioners, and no levy be made in 1893, that the whole law would fall, and that no further steps under the same could legally be taken, yet it was obligatory upon the commissioners to comply with this plain and express provision of the statute and that if they fail to do so, that a court on proper application being made, at a time when the duty can still be performed in obedience to the law, is bound to require it to be done. This is the office of a writ of mandamus. As defined in sec. 6741, Rev. Stat., it "is a writ issued in the name of the state to an inferior tribunal, corporation board or person commanding the performance of an act which the law specifically enjoins as a duty resulting from an office, trust or station," and by the express and positive language of this law, it is made the duty of the commissioners to levy on the duplicate of 1893 some part of the tax necessary to raise the money to pay for this improvement.

But the great difficulty in the case is to determine the amount or rate which must be so levied on the duplicate for 1893, and for each of the four following years. It must be conceded, we think, that the statute in several of its parts is most unskillfully drawn, and it is difficult to decide, with any certainty, what the real intention of the legislature in this respect was. But, in our opinion, it was that the tax was to be levied in five equal annual installments—the first on the duplicate in 1893, and that the others were to be of substantially the same amount—and each to be of such a part or portion (not proportion) of a mill on the dollar as would in the several years produce the same amount as nearly as can be done, and the amount produced by said levies in the aggregate to be "sufficient to pay one-half of the total cost and expense of improvement, together with the interest on any bonds issued by the commissioners, under the provisions of this act," and that the commissioners are further to assess upon the lots and lands liable thereto, "exclusive of any improvements thereon and in proportion to the average thereof, the remaining one-half of the cost and expense of said improvement, together with any bonds issued by the commissioners for the same," and that "said assessment shall be divided into five equal annual payments," and though there is no express statement that it shall be so, we think the obvious intent of the legislature was that the assessment of the first installment thereof should be made in 1893.

It is also provided that the commissioners "were required to issue the bonds of the county, payable in installments, or at intervals, not exceeding in all, the period of five years." We incline to the opinion that it was the purpose of this legislation to have the bonds so issued that the tax and assessments as collected might be applied to the payment of the bonds then becoming due.

We are further of the opinion that as no further time is fixed when the bonds or any part of them shall be paid, and the relators are not averred to have any legal interest in this question, and do not allege any defect on the part of the commissioners in the issue thereof, there being nothing to show that payment for the bonds has been tendered, or that the bidders are ready and willing to take and pay for them, the petition states no cause of action in this respect against any of the defendants. But as to the levy of the tax for 1893, we think it does state a good cause of action against the commissioners, and the demurrer thereto will therefore be overruled.

*Matthews & Cleveland* and *W. A. Hicks*, for the relators.

*Spiegel, Bromwell & Foraker*, for the demurrer.